**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| ERIC GILBERT, | ) | |
| On behalf of himself and others similarly situated, | ) | CASE NO. 2:15-cv-02854 |
| | ) | |
| | ) | JUDGE GEORGE C. SMITH |
| Plaintiff, | ) | |
| | ) | MAGISTRATE JUDGE |
| v. | ) | NORAH MCCANN KING |
| | ) | |
| ABERCROMBIE & FITCH CO., et al., | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF'S MOTION FOR FINAL APPROVAL**
**OF CLASS ACTION SETTLEMENT AND APPLICATION FOR AN AWARD OF**
**ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES**

Plaintiff Eric Gilbert ("Plaintiff") hereby moves the Court for: (i) an order granting final approval of the settlement of the above-captioned class action on the terms set forth in the Stipulation and Agreement of Settlement (the "Stipulation"); and (ii) an order granting an award of attorneys' fees and reimbursement of expenses to Plaintiff's counsel to be paid by Defendant Abercrombie & Fitch Co. ("ANF" or the "Company") (or any applicable insurer) in accordance with the terms of the Stipulation (the "Motion").

The grounds for the Motion are set forth in the accompanying Memorandum, the Declaration of Robin Winchester, any evidence presented, all other matters of which the Court may take judicial notice, and such additional evidence or argument as may be required by the Court.

Dated: June 7, 2016

Respectfully submitted,

/s/ Mark H. Troutman
**ISAAC WILES BURKHOLDER &**
**TEETOR, LLC**
Mark H. Troutman (0076390)

Of Counsel:

**KESSLER TOPAZ**
   **MELTZER & CHECK, LLP**
Eric L. Zagar
Robin Winchester
280 King of Prussia Road
Radnor, PA 19087
Phone: (610) 667-7706
ezagar@ktmc.com
rwinchester@ktmc.com

**FRIEDMAN OSTER & TEJTEL PLLC**
Jeremy Friedman
Spencer Oster
David Tejtel
240 E. 79th Street, Suite A
New York, NY 10075
Phone:  (888) 529-1108
jfriedman@fotpllc.com
soster@fotpllc.com
dtejtel@fotpllc.com

Two Miranova Place, Ste. 700
Columbus, Ohio 43215
Phone: (614) 221-2121
Facsimile: (614) 365-9516
mtroutman@isaacwiles.com

*Attorneys for Plaintiff Eric Gilbert*

## <u>TABLE OF CONTENTS</u>

**Page**

SUMMARY OF ARGUMENT ..................................................................................... vi

I.  INTRODUCTION ................................................................................................. 1

II.  FACTUAL AND PROCEDURAL BACKGROUND ......................................... 3

    A.  Background of the Action ......................................................................... 3

    B.  Settlement Negotiations and the Settlement ............................................ 5

    C.  Preliminary Approval and Notice to ANF Stockholders ......................... 6

III.  THE COURT SHOULD GRANT FINAL APPROVAL OF THE SETTLEMENT ......... 7

    A.  Legal Standard ......................................................................................... 7

    B.  The Settlement is Fair, Reasonable, and Adequate ................................. 8

        1.  The Settlement Confers Substantial Benefits Upon the Class ................... 8

        2.  The Settlement Is Devoid of Fraud or Collusion ..................................... 11

        3.  Class Plaintiff's Counsel's Recommendation to Settle the Action Was Well-Informed By Substantial Investigation ..................................... 12

        4.  The Settlement Is Congruent With the Strengths and Weaknesses of Plaintiff's Claims ............................................................................ 13

        5.  The Settlement Appropriately Weighs the Costs and Expenses of Continued Litigation ......................................................................... 15

        6.  The Settlement is Recommended By Well-Informed, Experienced Counsel for the Parties ....................................................................... 16

        7.  The Lack of Objections from Class Members to the Settlement Militates in Favor of Approval of the Settlements ................................... 17

        8.  The Settlement Serves the Public Interest ............................................... 17

    C.  The Court's Provisional Class Certifications Should Be Made Final .................. 18

IV.  THE AGREED-UPON AWARD OF ATTORNEYS' FEES AND EXPENSES IS FAIR AND REASONABLE AND SHOULD BE APPROVED ............................... 19

    A.  Negotiated Fees Are Favored By Courts ................................................. 19

B.    Plaintiff Is Entitled to An Award of Attorneys' Fees and Expenses ................... 19

C.    The Amount of Fees and Expenses Is Eminently Fair and Reasonable and Should be Approved ........................................................................................ 20

    1.    The Hours Expended by Class Plaintiff's Counsel Are Reasonable ........ 21

    2.    The Hourly Rates Charged by Class Plaintiff's Counsel Are Reasonable ................................................................................................. 22

        a.    The Hourly Rates Charged by Isaac Wiles Burkholder & Teetor, LLC Are Reasonable ................................................. 23

        b.    The Hourly Rates Charged By Kessler Topaz and Friedman Oster Are Reasonable ................................................. 23

    3.    The *Moulton* Factors Fully Support the Reasonableness of the Requested Attorneys' Fees and Expenses ...................................... 27

        a.    The Settlement Obtained Substantial Benefits for the Class ............................................................................... 28

        b.    Class Plaintiff's Counsel Prosecuted This Action on a Wholly Contingent Basis ........................................................ 28

        c.    Granting the Attorneys' Fees and Expenses Will Further Important Societal Interests ................................................. 29

        d.    The Attorneys' Fees and Expenses Are Fully Supported by Class Plaintiff's Counsel's Lodestar ....................................... 29

        e.    The Litigation Was Complex ...................................................... 30

        f.    The Parties Are Represented by Experience, Highly-Qualified Counsel ...................................................................... 30

V.    CONCLUSION ............................................................................................................. 31

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*In re Abercrombie & Fitch Co. Derivative Litig.*,
    No. 05-00819, 2009 U.S. Dist. LEXIS 130850 (S.D. Ohio Mar. 12, 2009) ............................9

*Adcock–Ladd v. Sec'y of Treasury*,
    227 F.3d 343 (6th Cir. 2000) ........................................................................................27, 28

*Amos v. PPG Indus., Inc.*,
    No. 05-70, 2015 WL 4881459 (S.D. Ohio Aug. 13, 2015) ...................................................25

*Aro Corp. v. Allied Witan Co.*,
    531 F.2d 1368 (6th Cir. 1976) ...............................................................................................7

*Bower v. MetLife, Inc.*,
    No. 09-351, 2012 U.S. Dist. LEXIS 149117 (S.D. Ohio Oct. 17, 2012) ..............................21

*In re Broadwing, Inc. ERISA Litig.*,
    252 F.R.D. 369 (S.D. Ohio 2006) ........................................................................................17

*In re Cardinal Health Inc. Sec. Litig.*,
    528 F. Supp. 2d 752 (S.D. Ohio 2007) .................................................................................28

*In Re Cardizem CD Antitrust Litig.*,
    218 F.R.D. 508 (E.D. Mich. 2003) ................................................................................14, 17

*City of Plantation Police Officers' Employees' Ret. Sys. v. Jeffries*,
    No. 14-1380, 2014 WL 7404000 (S.D. Ohio Dec. 30, 2014) .........................................*passim*

*Cohen v. Beneficial Indus. Loan Corp.*,
    337 U.S. 541 (1949) ............................................................................................................29

*Cohn v. Nelson*,
    375 F. Supp. 2d 844 (E.D. Mo. 2005) .................................................................................29

*In re Delphi Corp. Sec., Derivative & "ERISA" Litig.*,
    248 F.R.D. 483 (E.D. Mich. 2008) .......................................................................................8

*Dowling v. Litton Loan Servicing, LP*,
    No. 05-098, 2008 WL 906042 (S.D. Ohio Mar. 31, 2008) ..................................................23

*EMAK Worldwide, Inc. v. Kurz*,
    50 A.3d 429, 433 (Del. 2012) .........................................................................................9, 11

*Gascho v. Global Fitness Holdings, LLC*,
   No. 11-436, 2014 WL 1350509 (S.D. Ohio Apr. 4, 2014) .........................................15, 23, 30

*Gascho v. Global Fitness Holdings, LLC*,
   Nos. 14-3761, 14-3798, 2016 WL 2802473 (6th Cir. May 13, 2016) ................................8, 15

*Granada Invs., Inc. v. DWG Corp.*,
   962 F.2d 1203 (6th Cir. 1992) ..........................................................................................8, 12

*Hensley v. Eckerhart*,
   461 U.S. 424 (1983).................................................................................................................19

*Int'l Union, United Auto., Aerospace & Agr. Implement Workers of Am. v. Gen. Motors Corp.*,
   497 F.3d 615 (6th Cir. 2007) ...............................................................................................7, 8

*Kogan v. Aimco Fox Chase, L.P.*,
   193 F.R.D. 496 (E.D. Mich. 2000) .........................................................................................17

*In re KSW, Inc. S'holder Litig.*,
   No. 7875-VCG, Transcript (Del. Ch. May 9, 2013) ...............................................................26

*Midland Funding, LLC v. Brent*,
   No. 08-1434, 2011 WL 3557020 (N.D. Ohio 2011).................................................................19

*Mills v. Electric Auto-Lite, Co.*,
   396 U.S. 375 ............................................................................................................................20

*Minneapolis Firefighters' Relief Ass'n v. Ceridian Corp.*,
   No. 2996-CC, Transcript (Del. Ch. Feb. 25, 2008) ................................................................10

*Moulton v. U.S. Steel Corp.*,
   581 F.3d 344 (6th Cir. 2009) ...................................................................................21, 27, 28

*In re Nationwide Fin. Servs. Litig.*,
   No. 08-00249, 2009 WL 8747486 (S.D. Ohio Aug. 19, 2009) .........................................29, 30

*Pontiac Gen. Emps. Ret. Sys. v. Ballantine*,
   No. 9789-VCL, Transcript (Del. Ch. Oct. 14, 2014) ...............................................................9

*Pontiac Gen. Emps. Ret. Sys. v. Ballantine*,
   No. 9789-VCL, Transcript (Del. Ch. May 8, 2015)
   ("*Healthways* Settlement Hearing Tr.").................................................................10, 11, 26

*Poplar Creek Dev. Co. v. Chesapeake Appalachia, L.L.C.*,
   636 F.3d 235 (6th Cir. 2011) .................................................................................................13

*In re Porsche Cars N. Am., Inc. Plastic Coolant Tubes Prods. Liab. Litig.*,
  No. 11-md-2233, Plaintiffs' Application For Payment of Reasonable Attorneys' Fees,
  Reimbursement of Costs and Expenses, and Named Plaintiffs' Service Payments (S.D. Ohio
  Jan. 20, 2014) ................................................................................................................24, 25

*In re Porsche Cars N. Am., Inc. Plastic Coolant Tubes Prods. Liab. Litig.*,
  No. 11-md-2233, Final Approval Order (S.D. Ohio Mar. 19, 2014) .....................................26

*Ramey v. Cincinnati Enquirer, Inc.*,
  508 F.2d 1188 (6th Cir. 1974) ..............................................................................20, 21, 27

*Ranney v. Am. Airlines*,
  No. 08-137, 2016 WL 471220 (S.D. Ohio Feb. 8, 2016) ........................................................27

*San Antonio Fire & Police Pension Fund v. Amylin Pharm., Inc.*,
  983 A.2d 304 (Del. Ch. 2009) ...................................................................................................9

*San Antonio Fire & Police Pension Fund v. Bradbury*,
  No. 4446-VCN, 2010 WL 4273171 (Del. Ch. July 1, 2010) .......................................9, 10, 18

*Seinfeld v. Coker*,
  847 A.2d 330 (Del. Ch. 2000) .................................................................................................26

*In re Union Carbide Corp. Con. Prods. Bus. Sec. Litig.*,
  724 F. Supp. 160 (S.D.N.Y. 1989) ..........................................................................................28

*Williams v. Vokovich*,
  720 F.2d 909 (6th Cir. 1983) ...................................................................................................16

*In re Yahoo! S'holders Litig.*,
  No. 3561-CC, 2009 WL 6598374 (Del. Ch. Mar. 6, 2009) .....................................................10

**Statutes**

Class Action Fairness Act of 2005 ...........................................................................................2, 7

**Rules**

Fed. R. Civ. P. 23 .....................................................................................................................8, 18

**Other Authorities**

National Law Journal,
  *Billing Rates Across the Country*, Jan. 13, 2014 ...................................................................25

The Washington Post,
  *Patton Boggs agrees to merger with Squire Sanders*, May 23, 2014 ....................................25

<u>**SUMMARY OF ARGUMENT**</u>

**I.   THE COURT SHOULD GRANT FINAL APPROVAL OF THE SETTLEMENT
<u>(p. 7)</u>**

The Court should grant final approval of the Settlement because it is fair, reasonable, and

adequate.

> *Primary Authorities*: *Int'l Union, United Auto., Aerospace & Agr. Implement Workers of
> Am. v. Gen. Motors Corp.*, 497 F.3d 615 (6th Cir. 2007); *Aro Corp. v. Allied Witan Co.*,
> 531 F.2d 1368 (6th Cir. 1976); Fed. R. Civ. P. 23(e); Fed. R. Civ. P. 23(e)(2); *Gascho v.
> Global Fitness Holdings, LLC*, Nos. 14-3761, 14-3798, 2016 WL 2802473 (6th Cir. May
> 13, 2016); *Granada Invs., Inc. v. DWG Corp.*, 962 F.2d 1203 (6th Cir. 1992).

**A.   The Settlement Confers Substantial Benefits Upon ANF Stockholders (p. 8)**

The Settlement confers substantial benefits upon the Class.  *First*, as a result of the

Amendments, the Class will not suffer any adverse consequences should any stockholder run, or

even threaten, a proxy contest to replace a majority of directors, as such action will no longer

trigger the possibility of debt acceleration under the Credit Agreements.  *Second*, the important

Board-level procedure achieved by the Settlement ensures continued protection of the ANF

stockholder franchise from threats similar to those posed by the Dead Hand Proxy Puts at issue

in this Action.  Indeed, the Settlement is an outstanding resolution for the Class members, who

are now positioned to reap the long-term benefits of a strong corporate governance reform that is

directly designed and specifically tailored to protect their fundamental rights to freely vote and

participate in proxy contests at the Company.

**B.   The Settlement Is Devoid Of Fraud Or Collusion (p. 11)**

The Settlement is the result of months of intensive, arm's-length negotiations amongst

the Parties.  By the time a settlement was reached, the strengths and weaknesses of each Party's

claims and defenses were exhaustively explored and well-known to all participants in the

negotiation process.  In short, the Settlement is free of fraud or collusion.

*Primary Authorities*: *Granada Invs., Inc. v. DWG Corp.*, 962 F.2d 1203 (6th Cir. 1992).

**C.      Class Plaintiff's Counsel's Recommendation to Settle the Action Was Well-Informed By Substantial Investigation (p. 12)**

The Settlement is an efficient and successful result of this complex class action.  The Settlement was reached only after Class Plaintiff's Counsel were educated on the factual and legal issues presented in this Action by way of their extensive investigation.  There is no question that this thorough investigation was sufficient to allow Class Plaintiff's Counsel to intelligently evaluate the strengths and weaknesses of their client's own litigation position, as well as that of the Defendants.  Moreover, the fact that the Settlement was achieved prior to the commencement of formal discovery should not discredit the efficiency with which the Parties resolved this Action where, as here, the recommendations of highly qualified counsel to settle were well-informed and thoroughly vetted, and the compromise confers substantial benefits upon the Class.

**D.      The Settlement Is Congruent With the Strengths and Weaknesses of Plaintiff's Claims (p. 13)**

The Settlement is an excellent result in light of the relative strengths and weaknesses of Plaintiff's two sets of claims (*i.e.*, those relating the Dead Hand Proxy Puts and those relating to the Poison Puts).  Through the Settlement, Plaintiff was able to obtain complete relief on the claims relating to the Dead Hand Proxy Puts, which were based upon well-established Delaware law.  In exchange for this relief, and as part of the hard fought negotiation process that culminated in the Settlement, Plaintiff agreed to relinquish his more uncertain set of claims relating to the Poison Puts.  In light of the strengths and weaknesses presented by the two sets of claims, Plaintiff submits that the immediate and concrete relief obtained through the Settlement far outweighs the potential downside of foregoing continued litigation, particularly as it would relate to the continued prosecution of the Poison Put claims.

*Primary Authorities*: *Poplar Creek Dev. Co. v. Chesapeake Appalachia, L.L.C.*, 636 F.3d 235 (6th Cir. 2011).

### E. The Settlement Appropriately Weighs the Costs and Expenses of Continued Litigation (p. 15)

Class actions are inherently complex and settlement avoids the costs and delays associated with their continued litigation. This Action is no exception. Although Plaintiff believes that his claims have substantial merit, proving liability was by no means a foregone conclusion, and the continued litigation of this Action would have undoubtedly been complex, costly, and of substantial duration. The Settlement, however, avoids these expenses to both the benefit of the Court and the Parties, while simultaneously conferring substantial benefits upon the Class on whose behalf the Action was brought.

*Primary Authorities*: *Gascho v. Global Fitness Holdings, LLC*, No. 2:11-CV-436, 2014 WL 1350509 (S.D. Ohio Apr. 4, 2014), *report and recommendation adopted*, No. 2:11-CV-00436, 2014 WL 3543819 (S.D. Ohio July 16, 2014), *aff'd*, No. 14-3761, 2016 WL 2802473 (6th Cir. May 13, 2016).

### F. The Settlement Is Recommended By Well-Informed, Experienced Counsel for the Parties (p. 16)

Highly qualified counsel for the Parties recommend the Settlement, and their recommendation is entitled to appropriate deference. Class Plaintiff's Counsel possess extensive class action experience and are well-known for their expertise in complex litigation. Class Plaintiff's Counsel are therefore well aware of the legal standards and defenses involved in the Action, and have made a considered judgment, based on their knowledge of the facts and their extensive experience, that the Settlement is in the best interests of the Class. Additionally, the Settlement is supported by counsel for Defendants, who are well-versed in stockholder representative actions and strongly advocated on behalf of their clients through the pendency of this Action.

*Primary Authorities*: *Williams v. Vokovich*, 720 F.2d 909 (6th Cir. 1983).

**G.     The Lack of Objections From Class Members to the Settlement Militates in Favor of Approval of the Settlement (p. 17)**

While the date for Class members to file objections has not passed, to date Class Plaintiff's Counsel is not aware of a single objection to the Settlement.  Although the lack of any objections is not by itself clear evidence of shareholder-wide approval of the settlement, this fact can give rise to an inference that most of the shareholders have no qualms with the proposed Settlement.

**H.     The Settlement Serves the Public Interest (p. 17)**

The Settlement benefits the public interest in multiple ways.  The Settlement of this class action lawsuit ends potentially long and protracted litigation and frees up judicial resources. Additionally, the Settlement serves a vital public interest by vindicating the ANF stockholder franchise.

**II.    THE COURT'S PROVISIONAL CLASS CERTIFICATIONS SHOULD BE <u>MADE FINAL (p. 18)</u>**

In connection with his Motion for Preliminary Approval, Plaintiff requested that the Court preliminarily certify the Class pursuant to Fed. R. Civ. P. 23(a) and 23(b)(1)(A) and (b)(2) so that Notice of the proposed Settlement could be disseminated.  The Preliminary Approval Order preliminarily approved: (i) the Class; (ii) Eric Gilbert as Class Representative for the Class; and (iii) Kessler Topaz as Class Plaintiff's Lead Counsel for the Class.  No factual circumstances have arisen since the entry of the Preliminary Approval Order that would impact the Court's provisional findings on certification.  Further, Class Plaintiff's Counsel is not aware of any objection to the Settlement, including, *inter alia*, the provisional certifications contained in the Preliminary Approval Order.  In light of the foregoing, and the reasons stated in Plaintiff's

Motion for Preliminary Approval, incorporated herein by reference, Plaintiff now request that these preliminary certifications be made final.

### III. THE AGREED-UPON AWARD OF ATTORNEYS' FEES AND EXPENSES IS FAIR AND REASONABLE AND SHOULD BE APPROVED (p. 19)

The Stipulation provides that Class Plaintiff's Counsel shall apply for an award of Attorneys' Fees and Expenses in an amount not to exceed $165,000.00 in attorneys' fees, plus reimbursement of actual, reasonable and ordinary litigation expenses not to exceed $2,000.00. The Stipulation provides that such fees and expenses to be paid by ANF (or any applicable insurer). Plaintiff respectfully requests the Court to approve the Attorneys' Fees and Expenses in full.

#### A. Negotiated Fees Are Favored By Courts (p. 19)

The Attorneys' Fees and Expenses are an arm's-length, good faith agreement amongst highly qualified counsel for the Parties. The United States Supreme Court has endorsed this type of consensual resolution of attorneys' fees as the ideal towards which litigants should strive.

*Primary Authorities*: *Hensley v. Eckerhart,* 461 U.S. 424 (1983).

#### B. Plaintiff Is Entitled to an Award of Attorneys' Fees and Expenses (p. 20)

Class Plaintiff's Counsel's efforts secured a settlement for the Class which eliminated the threats posed by the Dead Hand Proxy Puts and ensures ongoing protection from similar forms of harm to the ANF stockholder franchise. Accordingly, the Attorneys' Fees and Expenses is justified under the substantial benefit doctrine, and Plaintiff's is entitled to an award of reasonable attorneys' fee and expenses.

*Primary Authorities*: *Ramey v. Cincinnati Enquirer, Inc.*, 508 F.2d 1188 (6th Cir. 1974); *Mills v. Electric Auto-Lite, Co.*, 396 U.S. 375 (1970).

**C.**    **The Amount of Attorneys' Fees and Expenses Is Eminently Fair and Reasonable and Should Be Approved (p. 20)**

Because the Settlement does not provide for a common fund and because the exact benefit to the Class procured by the Settlement cannot be determined with precision, Plaintiff respectfully submits that an award based on the lodestar method of calculation is appropriate. The amount of hours dedicated by Class Plaintiff's Counsel to the prosecution of this Action and the hourly rates charged by Class Plaintiff's Counsel are reasonable and should be approved.

> *Primary Authorities*: *Moulton v. U.S. Steel Corp.*, 581 F.3d 344 (6th Cir. 2009); *Ramey v. Cincinnati Enquirer, Inc.*, 508 F.2d 1188 (6th Cir. 1974); *Gascho v. Global Fitness Holdings, LLC*, No. 2:11-CV-436, 2014 WL 1350509 (S.D. Ohio Apr. 4, 2014), *report and recommendation adopted*, No. 2:11-CV-00436, 2014 WL 3543819 (S.D. Ohio July 16, 2014), *aff'd*, No. 14-3761, 2016 WL 2802473 (6th Cir. May 13, 2016).

**D.**    **The *Moulton* Factors Fully Support the Reasonableness of the Requested Attorneys' Fees and Expenses (p. 27)**

When determining the reasonableness of a fee award, the Court may consider the factors set forth in *Moulton v. U.S. Steel Corp.*, 581 F.3d 344, 352 (6th Cir.2009).  Each of the *Moulton* factors supports the reasonableness of the Attorneys' Fees and Expenses.

> *Primary Authorities*: *Moulton v. U.S. Steel Corp.*, 581 F.3d 344 (6th Cir. 2009); *Ramey v. Cincinnati Enquirer, Inc.*, 508 F.2d 1188 (6th Cir. 1974); *Adcock–Ladd v. Sec'y of Treasury*, 227 F.3d 343 (6th Cir. 2000); *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541 (1949); *Gascho v. Global Fitness Holdings, LLC*, No. 2:11-CV-436, 2014 WL 1350509 (S.D. Ohio Apr. 4, 2014), *report and recommendation adopted*, No. 2:11-CV-00436, 2014 WL 3543819 (S.D. Ohio July 16, 2014), *aff'd*, No. 14-3761, 2016 WL 2802473 (6th Cir. May 13, 2016).

## <u>MEMORANDUM</u>

Plaintiff, by and through his undersigned counsel, respectfully submits this memorandum of points and authorities in support of his Motion.

## I.    <u>INTRODUCTION</u>

After several months of arm's-length negotiations, Plaintiff succeeded in achieving the Settlement,[1] which provides substantial benefits to the putative class of ANF stockholders on whose behalf the Action was brought (the "Class").    These benefits are twofold.    *First*, Defendants have amended the Credit Agreements to eliminate the threats posed by the Dead Hand Proxy Puts.  *See* Stipulation, §III.B.17.  This result provides complete relief for Plaintiff's claims relating to the Dead Hand Proxy Puts.  *Second*, Defendants have agreed to implement a Board-level procedure designed to protect the ANF stockholder franchise when the Board considers entering material contracts in the future.  *See* Stipulation, § III.B.18.  This benefit is particularly meaningful because it could not have been obtained had Plaintiff successfully litigated this matter to a judgment.  In short, the Settlement represents an outstanding result for the Class because it eliminates the threats posed by the Dead Hand Proxy Puts at issue in the Action and institutes a meaningful Board-level procedure and policy designed to prevent the ANF Board from improperly agreeing to similar provisions in future agreements.

The Settlement is the product of intensive, good faith negotiations amongst well-informed and experienced counsel for the Parties.  Class Plaintiff's Counsel have extensive

---

[1] Unless otherwise indicated, all capitalized terms shall have the same definitions as set forth in the Stipulation.  Plaintiff filed the Stipulation in connection with his Unopposed Motion for Preliminary Approval of Class Action Settlement (the "Motion for Preliminary Approval").  *See* ECF No. 18.  A copy of the Stipulation previously filed with the Court is attached as Exhibit 1 to the Declaration of Robin Winchester in Support of Plaintiff's Motion for Final Approval of Class Action Settlement and Application for an Award of Attorneys' Fees and Reimbursement of Expenses (the "Winchester Declaration" or "Winchester Decl.").

experience in shareholder class action and derivative litigation, and made a well-informed judgment, based on their substantial investigation and knowledge of the factual and legal issues in this Action, that the Settlement is in the best interests of the Class. The Settlement is also supported by counsel for Defendants, who are well-versed in stockholder representative actions and strongly advocated on behalf of their clients throughout the pendency of this Action.

The Stipulation also provides that Class Plaintiff's Counsel shall apply for – and Defendants shall take no position on – an award of attorneys' fees in an amount not to exceed $165,000.00, plus reimbursement of actual, reasonable and ordinary litigation expenses not to exceed $2,000.00 (the "Attorneys' Fees and Expenses"), with such fees and expenses to be paid by ANF (or any applicable insurer). *See* Stipulation at §III.D.21. The Attorneys' Fees and Expenses were negotiated at arm's-length, and are fair and reasonable given the substantial benefits achieved in the Settlement, fees awarded in precedent actions, and the time and effort expended by Class Plaintiff's Counsel in attaining these results.

The Class appears to agree that the Settlement is fair and reasonable. Pursuant to the Court's Preliminary Approval Order dated March 24, 2016, ANF notified the Class of the Settlement *via*: (i) filing a Form 8-K with the United States Securities and Exchange Commission ("SEC"); and (ii) posting on the "Investors" page of ANF's website, which shall remain through the Settlement Effective Date. *See* Stipulation, §III.E.26. Both forms of dissemination included, *inter alia*, copies of: (i) the Notice; (ii) the Stipulation; and (iii) the Preliminary Approval Order. In addition, Defendants supplemented the foregoing notice program by giving notice to ANF Stockholders consistent with that which is required under the Class Action Fairness Act of 2005 ("CAFA"). To date, Class Plaintiff's Counsel is not aware of

any objections to the agreed-upon Settlement and/or the agreed-upon Attorneys' Fees and Expenses.

In sum, the Settlement constitutes an excellent resolution of this litigation. Plaintiff has achieved immediate and lasting benefits for the Class that are directly related to the allegations at issue in this Action. The terms of the Settlement, including the Attorneys' Fees and Expenses, are fair, reasonable, and adequate based on the substantial benefits conferred upon the Class through the Settlement. Thus, final approval of the Settlement should be granted, and the Court should enter the following, submitted herewith: (i) the Order and Final Judgment Approving Class Action Settlement; and (ii) Fee Award Order.

## II.     FACTUAL AND PROCEDURAL BACKGROUND

### A.     Background of the Action

This is a stockholder class action brought against ANF, the Individual Defendants, and Wells Fargo. Plaintiff, a stockholder of ANF, brought suit on behalf of himself and the Class to remedy Defendants' alleged breaches of fiduciary duties owed by Defendants to Plaintiff and the Class. ANF is incorporated in Delaware and has its principal place of business in New Albany, Ohio. Compl., ¶12.[2]

On August 7, 2014, ANF entered into (i) the Term Loan Credit Agreement, with Wells Fargo serving as administrative agent, providing for an unsecured term loan to ANF in the principal amount of $300 million, maturing on August 7, 2021 (Compl., ¶¶ 27-28; *see also* Stipulation, §I.2); and (ii) the Revolving Credit Agreement, with Wells Fargo serving as administrative agent, which provided the Company with up to $400 million on a revolving basis, maturing on August 7, 2019. Compl., ¶ 29. Under Section 1.01 of each of the Credit

---

[2] Plaintiff's Class Action Complaint [ECF No. 2] (the "Complaint" or "Compl.").

Agreements, the definition of "Change of Control" contained a "Dead Hand Proxy Put" provision whereby a change of control would be triggered by, *inter alia*, the "occupation of a majority of the seats (other than vacant seats) on the board of directors of the Parent by Persons who were neither (i) nominated by the board of directors of the Parent nor (ii) appointed by directors so nominated."  Compl., ¶ 30.[3]

The Credit Agreements did not provide the Board an "approval" right that would allow it to disarm the Dead Hand Proxy Puts by "blessing" the nomination of – even without endorsing – dissident director nominees.  Compl., ¶ 3.  Therefore, any successful proxy fight that replaced a majority of the Board would qualify as a change of control under the Credit Agreements and could trigger potentially catastrophic debt acceleration.[4]  *See, e.g., id.* at ¶¶ 2-6, 41-42, 45.

The deterrent effect of the Dead Hand Proxy Puts and the Poison Puts in the Credit Agreements was twofold.  *Id.* at ¶ 6.  *First*, as a result of the Dead Hand Proxy Puts, potential activists would be deterred from seeking seats on the Board because the debt acceleration provisions would have a coercive effect on ANF Stockholders, compelling them to vote in favor of the incumbent directors in order to avoid potentially accelerating the Company's nearly $300 million of debt.  *Id.*  *Second*, as a result of the Poison Puts, potential acquirers seeking to initiate a takeover might be prevented from doing so because the Board had unlawfully ceded to the Company's lenders the authority to approve or reject a takeover.[5]  *Id.*

---

[3] Additionally, under both of the Credit Agreements, the acquisition of 33% or more of ANF's stock by any person or group would trigger an event of default that accelerated the debt and make it immediately due and payable (the "Poison Put").  *See* Compl., ¶¶ 5, 40-43.

[4] As of May 2, 2015, the gross amount outstanding under the Term Loan Credit Agreement was $298.5 million.  *See id.* at ¶¶ 3, 28, 45.

[5] Under Section 8.01(j) of the Credit Agreements, a "Change of Control" constitutes an "Event of Default."  *See* Compl., ¶ 31.  Section 8.02 of the Credit Agreements provides that upon an Event of Default, the Administrative Agent may, or at the request of the Required Lenders shall,

On August 22, 2015, Plaintiff filed the Complaint asserting claims on behalf of himself and a putative class of ANF Stockholders.  Stipulation, §I.1.  The Complaint alleged, *inter alia*, that (i) the Individual Defendants breached their fiduciary duties to Plaintiff and the Class by wrongfully agreeing to the Dead Hand Proxy Puts and Poison Put provisions in the Credit Agreements; and (ii) Wells Fargo aided and abetted said breaches of fiduciary duty.  *See* Compl., ¶¶ 32-39, 44-46, 55-62.  The Complaint seeks, among other things, declaratory and injunctive relief.  *Id*. at ¶ 63; Stipulation, §I.4.  On September 24, 2015, Defendants removed the Action to this Court.  Stipulation, §I.5; ECF No. 1.

### B.    Settlement Negotiations and the Settlement

Within weeks of Plaintiff filing the Action, ANF agreed to revise the Credit Agreements to eliminate the threats posed by Dead Hand Proxy Put provisions (the "Amendments").  *See* Stipulation, §II.6, §II.B.17.  Specifically, the Revolving Credit Agreement, dated as of August 7, 2014, was amended by removing from the definition of "change of control" the Dead Hand Proxy Put provisions whereby certain changes in the composition of the ANF Board would have constituted a change of control and thereby an event of default under the Revolving Credit Agreement.  *See* ANF, Current Report (Form 8-K), at 1 (Sept. 10, 2015) (attached to the Winchester Decl. as Exhibit 13).  The Term Loan Credit Agreement, also dated as of August 7, 2014, was amended by modifying the definition of "change of control" so that the definition no

---

"declare the unpaid principal amount of all outstanding Loans, all interest accrued and unpaid thereon, and all other Obligations . . . to be immediately due and payable, without presentment, demand, protest or other notice of any kind [.]" *Id.*  This quoted language is taken from the Revolving Credit Agreement.  *Id.* at ¶ 31 n.3. Section 8.02 of the Term Loan Credit Agreement adds the word "Term" before Loans, and also omits the phrase "other than Other Liabilities," but the language of this provision is otherwise identical to the one contained in the Revolving Credit Agreement.  *Id.*

longer treats changes in the composition of the ANF Board of Directors differently in the context of actual or threatened proxy solicitations. *Id.* at 1-2.

The Amendments were made effective as of September 10, 2015. Stipulation, §II.6. Based upon the Amendments, counsel for the Parties began arm's-length negotiations regarding a possible class-wide resolution of the Action. *See id.* at §II.7. As part of those discussions, ANF has agreed that, as part of the Settlement, the ANF Board will adopt a resolution instructing the General Counsel of the Company that, during the designated period, certain proposed agreements that include a Change-of-Control Provision must be presented to the ANF Board, prior to execution and delivery, for review of any impact of said Change-of-Control Provision on the ANF Stockholder voting franchise, among other factors in the Board's exercise of its business judgment. *See id.* at §III.B.18. This new procedure requires Board-level consideration before the Company can enter into any defined Agreements with provisions similar to the Dead Hand Proxy Puts at issue which could impinge on ANF's stockholders' voting rights. In or around February 18, 2016, counsel for the Parties concluded their settlement discussions and finalized the documentation of their agreement to resolve the Action on the terms set forth in the Stipulation. *See id.* at §II.8.

### C. Preliminary Approval and Notice to ANF Stockholders

On March 16, 2016, Plaintiff filed his Motion for Preliminary Approval, [ECF No. 18], and on March 24, 2016, the Court entered the Preliminary Approval Order. ECF No. 19.[6] In accordance with the Preliminary Approval Order, ANF notified the Class of the Settlement by: (i) filing a Form 8-K with the United States Securities and Exchange Commission ("SEC"); and (ii) posting on the "Investors" page of ANF's website, which shall remain through the Settlement

---

[6] A copy of the Preliminary Approval is attached to the Winchester Declaration as Exhibit 2.

Effective Date. *See* ANF, Current Report (Form 8-K) (Apr. 8, 2016) (attached to the Winchester Decl. as Exhibit 14).  Both components of the notice program provided ANF stockholders with, *inter alia*, copies of: (i) the Notice of Pendency and Proposed Settlement of Class Action; (ii) the Stipulation; and (iii) the Preliminary Approval Order.  *Id.*  Defendants augmented the foregoing notice program by giving notice to the Class consistent with that which is required under the CAFA by sending formal service of information about the Settlement and the Action to the Attorney General of the United States and the Attorneys General of the States designated in the statute.  *See* ECF No. 20.  The Notice contained a detailed description of the proposed Settlement, including the Attorneys' Fees and Expenses sought by Class Plaintiff's Counsel. Winchester Decl., ¶ 19.  The Notice further disclosed the time and place of the Settlement Hearing and advised the Class of the procedures for objecting to the proposed Settlement and/or the request for Fees and expenses.  *Id.*  The Notice provided a deadline of June 14, 2016 for Class members to object to the Settlement.  *Id.*  As of the date of this filing, no Class members have objected to the Settlement or any portion thereof.  *Id.* at ¶¶ 20, 33.

## III.  THE COURT SHOULD GRANT FINAL APPROVAL OF THE SETTLEMENT

### A.  Legal Standard

The Sixth Circuit adheres to the "federal policy favoring settlement of class actions." *Int'l Union, United Auto., Aerospace & Agr. Implement Workers of Am. v. Gen. Motors Corp.*, 497 F.3d 615, 632 (6th Cir. 2007) ("*UAW*") (citation omitted); *see also Aro Corp. v. Allied Witan Co.*, 531 F.2d 1368, 1372 (6th Cir. 1976) ("Public policy strongly favors settlement of disputes without litigation.").

Rule 23(e) provides that "[t]he claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval."  Fed. R. Civ. P. 23(e).  In determining whether to approve a class action settlement, the court must conclude that

the proposed settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). The following factors guide this inquiry:

> (1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest.

*Gascho v. Global Fitness Holdings, LLC*, Nos. 14-3761, 14-3798, 2016 WL 2802473, at *5 (6th Cir. May 13, 2016) (quoting *UAW*, 497 F.3d at 631).

The Court "enjoys wide discretion in assessing the weight and applicability of these factors." *Granada Invs., Inc. v. DWG Corp.*, 962 F.2d 1203, 1205-06 (6th Cir. 1992). As such, the Court "may choose to consider only those factors that are relevant to the settlement at hand and may weigh particular factors according to the demands of the case." *In re Delphi Corp. Sec., Derivative & "ERISA" Litig.*, 248 F.R.D. 483, 496 (E.D. Mich. 2008) (citations omitted). However, in considering these factors, the Court's role "is not to decide whether one side is right or even whether one side has the better of these arguments . . . . The question rather is whether the parties are using settlement to resolve a legitimate legal and factual disagreement." *UAW*, 497 F.3d at 632.

### B. The Settlement is Fair, Reasonable, and Adequate

#### 1. The Settlement Confers Substantial Benefits Upon the Class

The Settlement confers substantial benefits on the Class by providing immediate and lasting protections to ANF stockholders' fundamental rights to vote and ability to participate in proxy contests free of coercion or undue influence.

Delaware law – which governs the defendants' conduct as ANF is a Delaware corporation – has long-recognized the sanctity of shareholder voting rights.[7]    *See EMAK Worldwide, Inc. v. Kurz*, 50 A.3d 429, 433 (Del. 2012) ("Shareholder voting rights are sacrosanct.  The fundamental governance right possessed by shareholders is the ability to vote for the directors the shareholder wants to oversee the firm.  Without that right, a shareholder would more closely resemble a creditor than an owner.").  Indeed, vindication of the stockholder voting franchise serves a "major public policy objective" and confers "very real" benefits on a company and/or its stockholders.  *See San Antonio Fire & Police Pension Fund v. Bradbury*, No. 4446-VCN, 2010 WL 4273171, at *13 (Del. Ch. July 1, 2010) ("*Amylin II*") ("Vindication of the shareholder franchise is a major public policy objective; as a core value in corporate governance, steps undertaken to protect the stockholder franchise may be recognized as having a very real, even if unquantifiable, benefit.").

Consistent with these principles, Delaware courts have long criticized proxy puts – even those without a so-called "dead hand" feature – because of their potential to improperly frustrate stockholder voting rights.  *See*, *e.g.*, *San Antonio Fire & Police Pension Fund v. Amylin Pharm., Inc.*, 983 A.2d 304, 307 (Del. Ch. 2009) ("*Amylin I*") (finding proxy put provisions – even those without a "dead hand" feature – "can operate as improper entrenchment devices that coerce stockholders into voting only for persons approved by the incumbent board[.]"); *Pontiac Gen. Emps. Ret. Sys. v. Ballantine*, No. 9789-VCL, Transcript at 74:15-19 (Del. Ch. Oct. 14, 2014) (Oral Argument on Defendants' Motion to Dismiss and Rulings of the Court) (attached to the Winchester Decl. as Exhibit 10) (noting the existence of a proxy put "would have a chilling

---

[7] Because ANF is incorporated in Delaware, Delaware law governs the fiduciary duties of its directors.  *See In re Abercrombie & Fitch Co. Derivative Litig.*, No. 05-00819, 2009 U.S. Dist. LEXIS 130850, at *7 (S.D. Ohio Mar. 12, 2009).

effect on, among other things, potential proxy contests such that the stockholders would be deterred, they would have the Sword of Damocles hanging over them, when they were deciding what to do with respect to a proxy contest.").

Correspondingly, it is well-established in Delaware that the elimination of a deterrent to a potential proxy contest constitutes a substantial benefit. *See, e.g., Amylin II*, 2010 WL 4273171, at *13 (finding settlement that, *inter alia*, obtained a waiver from the relevant parties to a credit agreement that would prevent an event of default from arising upon triggering of a proxy put no longer "frustrat[ed] the stockholders' ability to elect a new majority of directors to the Company's board—a fundamental stockholder right without which the legitimacy of board power comes into question," and thus conferred "significant and substantial benefits" upon stockholders); *In re Yahoo! S'holders Litig.*, No. 3561-CC, 2009 WL 6598374, at *1 (Del. Ch. Mar. 6, 2009) (characterizing as a substantial benefit an aspect of the settlement which provided for the elimination of the dead-hand provision in a severance plan that would have deterred election of a new slate of directors); *Minneapolis Firefighters' Relief Ass'n v. Ceridian Corp.*, No. 2996-CC, Transcript at 5:1-20, 23:12-24:15 (Del. Ch. Feb. 25, 2008) (Settlement Hearing) (attached to the Winchester Decl. as Exhibit 12) (approving settlement which provided for elimination of a termination right for the merger partner in the event a new slate of directors was elected before the merger closed).

The substantial benefits achieved by the Settlement are nearly identical to those obtained by the plaintiffs in the *Healthways* case. *See Pontiac Gen. Emps. Ret. Sys. v. Ballantine*, No. 9789-VCL, Transcript (Del. Ch. May 8, 2015) (Settlement Hearing) ("*Healthways* Settlement Hearing Tr.") (attached to the Winchester Decl. as Exhibit 11). Specifically, the *Healthways* court approved a settlement that afforded two-fold relief to plaintiffs: (1) the elimination of the

-10-

dead hand proxy put from Healthways' credit agreement; and (2) a corporate governance reform requiring that any future material contracts containing change-of-control provisions would be presented to the Healthways board of directors for consideration.  *Healthways* Settlement Hearing Tr. at 37:3-15, 38:7-11.  The *Healthways* court lauded the corporate governance relief and found that the Settlement, taken as a whole, "exceed[ed] what the plaintiffs likely could have obtained at trial and [was] certainly within a range of reasonableness for the release that the plaintiffs [were] giving on behalf of the class."  *Id.* at 37:16-38:11.  The *Healthways* court awarded $1.2 million in attorneys' fees to the plaintiffs.  *Id.* at 42:3-4.

Like in *Healthways*, the Settlement here confers meaningful benefits upon the Class.  *First*, as a result of the Amendments, the Class will not suffer any adverse consequences should any stockholder run, or even threaten, a proxy contest to replace a majority of directors, as such action will no longer trigger the possibility of debt acceleration under the Credit Agreements.  *Second*, the important Board-level procedure achieved by the Settlement ensures continued protection of the ANF stockholder franchise from threats similar to those posed by the Dead Hand Proxy Puts at issue in this Action.  *Third*, like *Healthways*, the Settlement arguably exceeds the relief that Plaintiff could have obtained at trial.  Without question, the Settlement has vindicated, both now and for years to come, "[t]he fundamental governance right possessed by [ANF] stockholders . . . to vote for the directors the shareholder[s] want to oversee the firm."  *EMAK*, 50 A.3d at 433.  Accordingly, the substantial benefits conferred on the Class as a result of the Settlement strongly support final approval.

### 2.    The Settlement Is Devoid of Fraud or Collusion

The Sixth Circuit has long-recognized that complex litigation is "notoriously difficult and unpredictable," such that "[a]bsent evidence of fraud or collusion, such settlements are not to be trifled with."  *Granada*, 962 F.2d at 1205.  The Settlement of this complex shareholder class

action is utterly free of fraud or collusion.  The Settlement is the culmination of protracted negotiations that occurred over many months between experienced counsel who possessed a firm understanding of the strengths and weaknesses of the claims and defenses asserted.  Winchester Decl., ¶¶ 23, 24.  Counsel for the Parties participated in repeated discussions and exchanged numerous drafts of proposed settlement terms.  *Id.*  The Parties have submitted several reports and filings to the Court reporting on the status of these negotiations.  *See, e.g.*, ECF Nos. 6, 11, 13 and 15.  The arm's-length, good faith negotiation process that culminated in the Settlement weighs heavily in favor of final approval.

### 3. Class Plaintiff's Counsel's Recommendation to Settle the Action Was Well-Informed By Substantial Investigation

The Settlement is an efficient and successful result of this complex class action.  Indeed, the Settlement was reached only after Class Plaintiff's Counsel were educated on the factual and legal issues presented in this Action by way of their extensive investigation.  Winchester Decl., ¶¶ 25, 32.  Throughout the development and prosecution of this Action, Class Plaintiff's Counsel conducted a thorough investigation into the facts and law at issue.  *Id.* at ¶ 25.  This investigation included: (i) inspecting, reviewing, and analyzing the Company's filings with the SEC; and (ii) researching the applicable law with respect to claims predicated on Dead Hand Proxy Puts and Poison Put provisions and potential defenses thereto.  *Id.*  Class Plaintiff's Counsel pre-suit investigation resulted in the well-researched Complaint that was filed in this Action.  *Id.*  Class Plaintiff's Counsel's investigation into the merits of the Action and risks of further litigation then continued up to the time the proposed Settlement was entered into by the Parties.  *Id.*  There is no question that this thorough investigation was sufficient to allow Class Plaintiff's Counsel to intelligently evaluate the strengths and weaknesses of their client's own litigation position, as well as that of the Defendants.  *Id.* at ¶¶ 25, 27.  In addition, the Defendants are represented by

well-experienced counsel who have vigorously advocated on behalf of their clients. *Id.* at ¶¶ 5, 7. The diligence exhibited by counsel for the Parties throughout this Action ensured that their recommendations to enter into the Settlement were well-informed and reasonable. *Id.* at ¶ 8.

The fact that the Settlement was achieved prior to the commencement of formal discovery should not discredit the efficiency with which the Parties resolved this Action where, as here, these recommendations were well-informed and thoroughly vetted, and the compromise confers substantial benefits upon the Class. *See City of Plantation Police Officers' Employees' Ret. Sys. v. Jeffries*, No. 14-1380, 2014 WL 7404000, at *7 (S.D. Ohio Dec. 30, 2014) ("*Jeffries*") (noting, in the related context of a shareholder derivative action, that "shareholders can benefit from the quick resolution of complex litigation . . . . so long as the investigation of the claims has been adequate and so long as the settlement contemplates substantial benefits to the corporation and its shareholders") (citing *Robinson v. Ford Motor Co.*, No. 04–00844, 2005 WL 5253339 (S.D. Ohio June 15, 2005)).

**4. The Settlement Is Congruent With the Strengths and Weaknesses of Plaintiff's Claims**

The Settlement is also an excellent result in light of the relative strengths and weaknesses of Plaintiff's two sets of claims (*i.e.*, those relating the Dead Hand Proxy Puts and those relating to the Poison Puts). *See Poplar Creek Dev. Co. v. Chesapeake Appalachia, L.L.C.*, 636 F.3d 235, 245 (6th Cir. 2011) ("The most important of the factors to be considered in reviewing a settlement is the probability of success on the merits. The likelihood of success, in turn, provides a gauge from which the benefits of the settlement must be measured.") (quoting *In re Gen. Tire & Rubber Co. Sec. Litig.*, 726 F.2d 1075, 1086 (6th Cir. 1984)).

The Complaint alleged, *inter alia*, that (i) the Individual Defendants breached their fiduciary duties to Plaintiff and the Class by wrongfully agreeing to the Dead Hand Proxy Puts

and Poison Put provisions in the Credit Agreements; and (ii) Wells Fargo aided and abetted said breaches of fiduciary duty. *See* Compl., ¶¶ 32-39, 44-46, 55-62. Without question, successfully alleging, and then proving, that Defendants breached their fiduciary to Plaintiff and the Class in contravention of Delaware law would have been difficult. *See Jeffries*, 2014 WL 7404000, at *8-9 (discussing difficulties of alleging and proving breach of fiduciary duty claims under Delaware law).

Recognizing these hurdles, Plaintiff moved diligently to effectuate a successful compromise to this Action that is congruent with the strengths and weakness of his two sets of claims. Through the Settlement, Plaintiff was able to obtain complete relief on the claims relating to the Dead Hand Proxy Puts, which were based upon well-established Delaware law. Winchester Decl., ¶28. In exchange for this relief, and as part of the hard fought negotiation process that culminated in the Settlement, Plaintiff agreed to relinquish his more uncertain set of claims relating to the Poison Puts. *Id.* In light of the strengths and weaknesses presented by the two sets of claims, Plaintiff submits that the immediate and concrete relief obtained through the Settlement far outweighs the potential downside of foregoing continued litigation, particularly as it would relate to the continued prosecution of the Poison Put claims. *Id.*

Plaintiff's decision to settle this Action is all the more reasonable in light of the very real possibility that continued litigation could have easily yielded no benefit for the Class. Winchester Decl., ¶28; *see In Re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 523 (E.D. Mich. 2003) ("[T]he prospect of a trial necessarily involves the risk that Plaintiffs would obtain little or no recovery."). Thus, for the reasons discussed above, the Settlement is an excellent result for the Class and deserves the final approval of this Court.

5.      **The Settlement Appropriately Weighs the Costs and Expenses of Continued Litigation**

The fairness, reasonableness, and adequacy of the Settlement is particularly apparent when contrasted with the risks and expenses of continued litigation.  "'Generally speaking, [m]ost class actions are inherently complex and settlement avoids the costs, delays, and multitude of other problems associated with them.'"  *Gascho v. Global Fitness Holdings, LLC*, No. 11-436, 2014 WL 1350509, at *18 (S.D. Ohio Apr. 4, 2014), *report and recommendation adopted*, No. 11-00436, 2014 WL 3543819 (S.D. Ohio July 16, 2014), *aff'd*, No. 14-3761, 2016 WL 2802473 (6th Cir. May 13, 2016) (quoting *In re Telectronics Pacing Sys., Inc.*, 137 F. Supp. 2d 985,1013 (S.D. Ohio 2001), *decision clarified*, 148 F. Supp. 2d 936 (S.D. Ohio 2001)) (internal quotation marks omitted).  Although Plaintiff believes that his claims have substantial merit, as discussed in Section III(b)(4), proving liability was by no means a foregone conclusion. Indeed, in light of the relative novelty of his claims, Plaintiff fully anticipated that Defendants would file motions to dismiss the Action in whole or in part.  Winchester Decl., ¶30.  Assuming Plaintiff's claims were to survive this initial round of dispositive motions, document discovery would need to be completed, depositions would need to be taken, experts would need to be designated, and expert discovery conducted.  *Id.*  Defendants' expected motions for summary judgment would then have to be briefed and argued.  *Id.*  In the event Plaintiff overcame this second wave of dispositive motions, a trial would have to be held, which could occupy attorneys on both sides and the Court for a substantial amount of time.  *Id.*  Furthermore, any judgment favorable to the Class would likely be the subject of post-trial motions and appeals, which would prolong the Action for years with the ultimate outcome uncertain.  *Id.*  In sum, continued litigation of this Action would have undoubtedly been complex, costly, and of substantial duration.  The Settlement, however, avoids these expenses to both the benefit of the Court and

the Parties, while simultaneously conferring substantial benefits upon the Class on whose behalf the Action was brought.

> ### 6.    The Settlement is Recommended By Well-Informed, Experienced Counsel for the Parties

Highly qualified counsel for the Parties recommend the Settlement, and their recommendation is entitled to appropriate deference. *See*, *e.g.*, *Williams v. Vokovich*, 720 F.2d 909, 922 (6th Cir. 1983).  Class Plaintiff's Counsel possess extensive class action experience and are well-known for their expertise in shareholder class and derivative actions.  *See*, *e.g.*, Winchester Decl., ¶ 6, Ex. 5 (Kessler Topaz Firm Resume); Declaration of Jeremy Friedman In Support of Plaintiff's Motion for Final Approval of Class Action Settlement and Application for an Award of Attorneys' Fees and Reimbursement of Expenses ("Friedman Decl.") (attached to the Winchester Decl. as Exhibit 4), ¶¶ 2, 12, Ex. A; Declaration of Mark Landes in Support of Application for an Attorneys' Fees and Reimbursement of Expenses Pertaining to Isaac Wiles, Burkholder & Teetor, LLC ("Landes Decl."), ¶¶ 3.  In particular, Class Plaintiff's Lead Counsel, Kessler Topaz Meltzer & Check, LLP ("Kessler Topaz") are among the most experienced and skilled practitioners in the stockholder and transactional litigation fields.  Winchester Decl., ¶ 6. With almost 100 attorneys specializing in complex stockholder litigation, Kessler Topaz has served as lead or co-plaintiffs' counsel in numerous securities and complex litigation matters, including serving as lead or co-plaintiffs' counsel in hundreds of stockholder derivative and class actions in state and federal courts across the country.  *Id.*  Class Plaintiff's Counsel are therefore well aware of the legal standards and defenses involved in the Action, and have made a considered judgment, based on their knowledge of the facts and their extensive experience, that the Settlement is in the best interests of the Class.  *Id.* at ¶ 24.  Additionally, the Settlement is supported by counsel for Defendants, who are well-versed in stockholder representative actions

and strongly advocated on behalf of their clients through the pendency of this Action. *Id.* at ¶ 7. Accordingly, Plaintiff respectfully requests the Court grant due deference to the collective recommendation of counsel for the Parties to enter into the Settlement.

### 7. The Lack of Objections from Class Members to the Settlement Militates in Favor of Approval of the Settlements

While the date for Class members to file objections has not passed, to date Class Plaintiff's Counsel is not aware of a single objection to the Settlement. Winchester Decl., ¶¶ 20, 33. Although the lack of any objections "is not by itself clear evidence of shareholder-wide approval of the settlement," this "fact can give rise to an inference that most of the shareholders ha[ve] no qualms with the proposed [S]ettlement." *Jeffries*, 2014 WL 7404000, at *10; *see also Kogan v. Aimco Fox Chase, L.P.*, 193 F.R.D. 496, 502 (E.D. Mich. 2000) (finding "the fact that not one class member objected after receiving the best notice possible under the circumstances to weigh heavily in favor of approving the settlement agreement"); *see also In re Broadwing, Inc. ERISA Litig.*, 252 F.R.D. 369, 376 (S.D. Ohio 2006) (noting that a "small number of objectors is a good indication of the fairness of the settlement"). Accordingly, this factor weighs in favor of final approval of the Settlement.

### 8. The Settlement Serves the Public Interest

The Settlement benefits the public interest in multiple ways. *First*, "[t]here is a strong public interest in encouraging settlement of complex litigation and class action suits because they are 'notoriously difficult and unpredictable' and settlement conserves judicial resources." *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 530 (E.D. Mich. 2003) (quoting *Granada*, 962 F.2d at 1205). *Second*, the Settlement ends potentially long and protracted litigation and frees up judicial resources. *Jeffries*, 2014 WL 7404000, at *11 (citing *In re Telectronics*, 137 F. Supp. 2d at 1025). *Third*, the Settlement serves a vital public interest by vindicating the voting rights of

ANF stockholders.  As noted by the Delaware Court of Chancery in *Amylin II*, "[v]indication of the shareholder franchise is a major public policy objective; as a core value in corporate governance, steps undertaken to protect the stockholder franchise may be recognized as having a very real, even if unquantifiable, benefit."  2010 WL 4273171, at *13.  Indeed, as discussed in Section III(B)(1) above, the Settlement has procured immediate and lasting benefits for the ANF stockholder franchise that not only address the specific threats alleged in the Complaint, but also help to prevent these harms from resurfacing in the future.  In short, the public interests served by the Settlement are myriad.

### C.    The Court's Provisional Class Certifications Should Be Made Final

In connection with his Motion for Preliminary Approval, Plaintiff requested that the Court preliminarily certify the Class pursuant to Fed. R. Civ. P. 23(a) and 23(b)(1)(A) and (b)(2) so that Notice of the proposed Settlement could be disseminated.  *See* ECF No. 18.  The Preliminary Approval Order preliminarily approved: (i) the Class; (ii) Eric Gilbert as Class Representative for the Class; and (iii) Kessler Topaz as Class Plaintiff's Lead Counsel for the Class.  *See* ECF No. 19.  No factual circumstances have arisen since the entry of the Preliminary Approval Order that would impact the Court's provisional findings on certification.  Winchester Decl., ¶ 20.  Further, Class Plaintiff's Counsel is not aware of any objection to the Settlement, including, *inter alia*, the provisional certifications contained in the Preliminary Approval Order. *Id.* at ¶¶ 20, 33.  In light of the foregoing, and the reasons stated in Plaintiff's Motion for Preliminary Approval, incorporated herein by reference, Plaintiff now request that these preliminary certifications be made final.

IV.    **THE AGREED-UPON AWARD OF ATTORNEYS' FEES AND EXPENSES IS FAIR AND REASONABLE AND SHOULD BE APPROVED**

The Stipulation provides that Class Plaintiff's Counsel shall apply for an award of Attorneys' Fees and Expenses in an amount not to exceed $165,000.00 in attorneys' fees, plus reimbursement of actual, reasonable and ordinary litigation expenses not to exceed $2,000.00. The Attorneys' Fees and Expenses shall be paid by ANF (or any applicable insurer).  *See* Stipulation at §III.D.21.  The Attorneys' Fees and Expenses were negotiated at arm's length amongst highly-qualified counsel, and are eminently fair and reasonable in light of the substantial benefits conferred on the Class through the Settlement. *See* Winchester Decl., ¶¶ 10, 35.  Accordingly, Plaintiff respectfully requests the Court to grant the proposed Fee Award Order submitted herewith.

A.    **Negotiated Fees Are Favored By Courts**

The Attorneys' Fees and Expenses are an arm's-length, good faith agreement among highly-qualified counsel for the Parties.  Winchester Decl., ¶ 10.  The United States Supreme Court has endorsed this type of consensual resolution of attorneys' fees as the ideal towards which litigants should strive.  *See Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983) ("A request for attorney's fees should not result in a second major litigation. Ideally, of course, litigants will settle the amount of a fee").  Because the good faith negotiations which culminated in the agreed-to Attorneys' Fees and Expenses were devoid of fraud or collusion, due deference should be given to counsel recommendations to enter into this aspect of the Settlement.  *See Midland Funding, LLC v. Brent*, No. 08-1434, 2011 WL 3557020, at *18 (N.D. Ohio 2011).

B.    **Plaintiff Is Entitled to An Award of Attorneys' Fees and Expenses**

The Sixth Circuit has long-recognized the "substantial benefit" doctrine, which provides that counsel who prosecute a shareholder class action which confers benefits on a putative class,

as here, are entitled to an award of attorneys' fees and costs.  *See Ramey v. Cincinnati Enquirer, Inc.*, 508 F.2d 1188, 1196 (6th Cir. 1974) (citing *Mills v. Electric Auto-Lite, Co.*, 396 U.S. 375, 396 (1970)).  The benefit achieved need not be pecuniary in nature.  *Mills*, 396 U.S. at 392 (noting "nothing … indicates that the suit must actually bring money into the court as a prerequisite to the court's power to order reimbursement of expenses").

As discussed in Section III(B)(1), Class Plaintiff's Counsel's efforts secured a settlement for the Class which eliminated the Dead Hand Proxy Puts and helps to ensure ongoing protection from similar forms of harm to the ANF stockholder franchise in the future.  Accordingly, the Attorneys' Fees and Expenses are justified under the substantial benefit doctrine, and Plaintiff is entitled to an award of reasonable attorneys' fee and expenses.  *See Jeffries*, 2014 WL 7404000, at *11.

### C.    The Amount of Fees and Expenses Is Eminently Fair and Reasonable and Should be Approved

Because the Settlement does not provide for a common fund and because the exact benefit to the Class procured by the Settlement cannot be determined with precision, Plaintiff respectfully submits that an award based on the lodestar method of calculation is appropriate. *Accord Jeffries*, 2014 WL 7404000, at *11.  "In determining an appropriate 'lodestar' figure, a court multiplies the number of hours reasonably expended on the litigation by a reasonable hourly rate."  *Id.* (citing *Bldg. Serv. Local 47 Cleaning Contractors Pension Plan v. Grandview Raceway*, 46 F.3d 1392, 1401 (6th Cir. 1995)).  "The court 'may then, within limits, adjust the 'lodestar' to reflect relevant considerations peculiar to the subject litigation.'"  *Id.* (quoting *Adcock–Ladd v. Sec'y of Treasury*, 227 F.3d 343, 349 (6th Cir. 2000)).  In assessing the reasonableness of a fee award, courts in the Sixth Circuit typically consider the following factors:

> (1) the value of the benefit rendered to the plaintiff class; (2) the value of the services on an hourly basis; (3) whether the services were undertaken on a contingent fee basis; (4) society's stake in rewarding attorneys who produce such benefits in order to maintain an incentive to others; (5) the complexity of the litigation; and (6) the professional skill and standing of counsel involved on both sides.

*Moulton v. U.S. Steel Corp.*, 581 F.3d 344, 352 (6th Cir. 2009); *see also Ramey*, 508 F.2d at 1196.

In investigating, prosecuting and settling this Action, Class Plaintiff's Counsel incurred a total lodestar of $155,951.00, and expended un-reimbursed litigation costs totaling $3,259.08.[8] The Attorneys' Fees and Expenses thus equate to a modest lodestar multiplier of 1.06.  As discussed below, the Attorneys' Fees and Expenses are fair and reasonable, and should be approved.

### 1.    The Hours Expended by Class Plaintiff's Counsel Are Reasonable

The amount of hours dedicated by Class Plaintiff's Counsel to the prosecution of this Action is reasonable.  *See* Winchester Decl., ¶ 50; Friedman Decl., ¶ 8; Landes Decl., ¶ 7.  From the outset, the inherent complexity of this Action required Class Plaintiff's Counsel to devote substantial resources to conducting an investigation into the strengths and weaknesses of each Party's litigation positions.  *See, e.g.*, Winchester Decl., ¶ 25.  After filing the Complaint, Class Plaintiff's Counsel then dedicated their resources to efficiently and successfully negotiating the terms of the Settlement on favorable terms for the Class.  *See, e.g., id.* at ¶¶ 23-24.  Moreover, Class Plaintiff's Counsel made a concerted effort to ensure that their resources were expended in

---

[8]  The expenses incurred by Class Plaintiff's Counsel were reasonably necessary in the prosecution of this Action.  *See* Winchester Decl., ¶ 50.  Accordingly, Class Plaintiff's Counsel request for reimbursement of actual, reasonable and ordinary litigation expenses not to exceed $2,000.00 should be approved.  *See Bower v. MetLife, Inc.*, No. 09-351, 2012 U.S. Dist. LEXIS 149117, at *24-25 (S.D. Ohio Oct. 17, 2012).

an efficient and non-duplicative manner.  Winchester Decl., ¶ 59.  Accordingly, the amount of hours expended by Class Plaintiff's Counsel in the prosecution of the Action was reasonable. *See Jeffries*, 2014 WL 7404000, at *13 (finding counsel's investigation, complexity of case, and results achieved among factors supporting reasonableness of amount of hours expended by plaintiff's counsel).

### 2. The Hourly Rates Charged by Class Plaintiff's Counsel Are Reasonable

The hourly rates charges by Class Plaintiff's Counsel are reasonable and should be approved.  "'A trial court, in calculating the reasonable hourly rate component of the lodestar computation, should initially assess the prevailing market rate in the relevant community.'" *Jeffries*, 2014 WL 7404000, at *13 (quoting *Adcock-Ladd*, 227 F.3d at 350) (internal quotation marks and emphasis omitted).  "'The prevailing market rate is that rate which lawyers of comparable skill and experience can reasonably expect to command within the venue of the court of record.'"  *Jeffries*, 2014 WL 7404000, at *13 (quoting *Waldo v. Consumers Energy Co.*, 726 F.3d 802, 821 (6th Cir. 2013)) (internal quotation marks and emphasis omitted).  "'A court may, however, award a higher hourly rate for an out-of-town specialist if (1) hiring the out-of-town specialist was reasonable in the first instance, and (2) if the rates sought by the out-of-town specialist are reasonable for an attorney of his or her degree of skill, experience, and reputation."[9] *Jeffries*, 2014 WL 7404000 at *13 (quoting *Brian A. v. Hattaway*, 83 F. App'x 692, 694 (6th Cir. 1995)).

---

[9] Plaintiff submits that the retention of Kessler Topaz Meltzer & Check, LLP ("Kessler Topaz") and Friedman Oster & Tejtel PLLC ("Friedman Oster") as out-of-District counsel was reasonable in the first instance.  *See Jeffries*, 2014 WL 7404000, at *14.  ANF is a publicly-traded Delaware company with an international presence, Plaintiff is an ANF shareholder from Florida, and the issues in this case are complex and extend well beyond the peculiarities of this District. *See id.*  Indeed, the substantive law governing the duties of ANF's directors is Delaware law and

-22-

Class Plaintiff's Counsel have substantial expertise in shareholder representative litigation and complex litigation, generally.  As detailed herein and in the accompanying declarations, Class Plaintiff's Counsel's hourly rates are well within the range of rates of attorneys with comparable skill and experience and should therefore be approved by the Court.

### a. The Hourly Rates Charged by Isaac Wiles Burkholder & Teetor, LLC Are Reasonable

The hourly rates charged by Isaac Wiles Burkholder & Teetor, LLC ("Isaac Wiles") are reasonable as they "are in the range of its usual and customary hourly rates charged" in cases similar to this Action.  Landes Decl., ¶ 8.  Indeed, Isaac Wiles' hourly rates have been recently approved by the Court.  *See, e.g., Gascho*, 2014 WL 1350509, at *35 (finding hourly rates of Isaac Wiles to be "consistent with those in the market and the Court's experience").  Accordingly, the hourly rates of Isaac Wiles should be approved by the Court.

### b. The Hourly Rates Charged By Kessler Topaz and Friedman Oster Are Reasonable

The hourly rates charged by Kessler Topaz and Friedman Oster are reasonable for several reasons.  *First*, the rates charged by Kessler Topaz and Friedman Oster are their respective customary hourly rates.  Winchester Decl., ¶ 52; Friedman Decl., ¶ 10.  *Compare Jeffries*, 2014 WL 7404000, at *13 (finding lack of reasonableness of plaintiff's counsel rates because, *inter alia*, "there [was] . . . no evidence that the rates charged are plaintiff's counsel's standard hourly rates."); *see also Dowling v. Litton Loan Servicing, LP*, No. 05-098, 2008 WL 906042, at *1-2 (S.D. Ohio Mar. 31, 2008) (citing *Blum v. Stenson*, 465 U.S 886, 893 (1984)) (acknowledging attorneys' customary billing rate as indicia of reasonableness).

---

not the law of this District.  Moreover, the Parties are represented by counsel with regional and national expertise in the shareholder and class action litigation fields.  *See* Winchester Decl., ¶ 5, 6-7; Friedman Decl., ¶ 2; Landes Decl., ¶ 3.

*Second*, the hourly rates charged by Kessler Topaz and Friedman Oster are commensurate with each firms' respective degrees of skill, experience, and reputation. Winchester Decl., ¶¶ 6, 53; Friedman Decl., ¶¶ 2, 11.  *See Jeffries*, 2014 WL 7404000, at *13. For example, Kessler Topaz are among the most experienced and skilled practitioners in the securities and derivative litigation fields.  Winchester Decl., ¶ 6.  With almost 100 attorneys specializing in complex stockholder litigation, Kessler Topaz has served as lead or co-plaintiffs' counsel in numerous securities and complex litigation matters, including serving as lead or co-plaintiffs' counsel in hundreds of stockholder derivative and class actions in state and federal courts across the country.  *Id.*  Likewise, Friedman Oster is comprised of highly-qualified attorneys who specialize in complex shareholder litigation such as this Action, and despite its relatively short history Friedman Oster has already delivered substantial benefits to shareholders in actions prosecuted in Delaware and beyond.  Friedman Decl., ¶ 3.  Indeed, in *In re Porsche Cars N. Am., Inc. Plastic Coolant Tubes Prods. Liab. Litig.*, No. 11-md-2233 (S.D. Ohio) (*"In re Porsche"*), discussed in greater detail below, this Court approved hourly comparable to those of Kessler Topaz and Friedman Oster charged by counsel with similar specialized skill and expertise, and national reputation in its respective areas of practice.  Winchester Decl., ¶ 53.

*Third*, the hourly rates charged by Kessler Topaz and Friedman Oster are "consistent with the rates for similar services by lawyers of reasonably comparable skill, experience, and national reputation."  *Jeffries*, 2014 WL 7404000, at *14 (citing. *Blum*, 465 U.S. at 896 n. 11); *see also* Winchester Decl., ¶ 54; Friedman Decl., ¶ 12. Indeed, the hourly rates charged by Kessler Topaz and Friedman Oster are supported by findings made by the National Law Journal (the "NLJ") suggesting that these hourly rates are commensurate with those of counsel for certain of the Defendants who, like Kessler Topaz and Friedman Oster, possess extensive expertise and own

national reputations in the areas of shareholder derivative and class action litigation. *See* NLJ, *Billing Rates Across the Country*, Jan. 13, 2014 (available at http://www.nationallawjournal.com/id=1202636785489/Billing-Rates-Across-theCountry?slreturn=20160502110249) (relevant excerpts attached hereto as Exhibit 6) (interactive article reporting partner billing rates between $495 and $875 and associate billing rates between $280 and $575 for the law firm of Alston & Bird LLP, counsel for Wells Fargo); *id*. (reporting combined partner billing rates between $350 and $950 and combined associate billing rates between $250 and $530 for the law firms of Patton Boggs LLP and Squire Sanders LLP, both of whom would eventually merge into the law firm of Squire Patton Boggs LLP, counsel for Individual Defendants).[10]

*Fourth*, the hourly rates charged by Kessler Topaz and Friedman Oster are within the range of those approved by this Court. *See Amos v. PPG Indus., Inc.*, No. 05-70, 2015 WL 4881459, at *10 (S.D. Ohio Aug. 13, 2015) (citing *Hagy v. Demers & Adams, LLC*, No. 11-530, 2013 WL 5728345, at *13 (S.D. Ohio Oct. 22, 2013) (noting that courts may rely on awards in analogous cases when determining whether plaintiff's hourly rates are reasonable); *see also In re Porsche Cars N. Am., Inc. Plastic Coolant Tubes Prods. Liab. Litig.*, No. 11-md-2233, Plaintiffs' Application For Payment of Reasonable Attorneys' Fees, Reimbursement of Costs and Expenses, and Named Plaintiffs' Service Payments (S.D. Ohio Jan. 20, 2014) (attached to the Winchester Declaration as Exhibit 7) (requesting fee award of up to $4.5 million, plus $250,000 in litigation costs and service payments, based on hourly rates of up to $850 for partners and

---

[10] In 2014, Patton Boggs and Squire Sanders merged to form a new entity called Squire Patton Boggs LLP. *See* The Washington Post, *Patton Boggs agrees to merger with Squire Sanders*, May 23, 2014 (available at https://www.washingtonpost.com/business/_capitalbusiness/patton-boggs-agrees-to-merger-with-squire-sanders/2014/05/23/7f7e31ee-cb09-11e3-a75e-463587891b57_story.html).

$550 for associates for out-of-district counsel); *In re Porsche Cars N. Am., Inc. Plastic Coolant Tubes Prods. Liab. Litig.*, No. 11-md-2233, Final Approval Order (S.D. Ohio Mar. 19, 2014) (attached to the Winchester Decl. as Exhibit 8) (approving $4.5 million in attorneys' fees and expenses for hourly rates of up to $850 for out-of-district counsel).[11]

 *Fifth,* together, Kessler Topaz and Friedman Oster's blended hourly rate of $518.70 falls well within the range of those approved by the Delaware Court of Chancery, which has a national recognition for its expertise in corporate and shareholder litigation. Winchester Decl., ¶¶ 48, 56; Friedman Decl., ¶¶ 6, 14. Because Kessler Topaz and Friedman Oster actively litigate shareholder derivative and class action litigation in the Delaware Court of Chancery, the hourly rates approved in this venue serve as a meaningful gauge of the market value for these firms' services. Winchester Decl., ¶ 56; Friedman Decl., ¶ 14. Indeed, the hourly rates charged by Kessler Topaz and Friedman Oster, when viewed on an implied rate, fall well within the range of those that have been approved by the Delaware Court of Chancery. *See Seinfeld v. Coker*, 847 A.2d 330, 337-38 (Del. Ch. 2000) (awarding fee amounting to more than $1,300 per hour where the litigation was not hard fought, expedited proceedings were not sought, and no motion practice occurred); *In re KSW, Inc. S'holder Litig.*, No. 7875-VCG, Transcript at 26:10-11 (Del. Ch. May 9, 2013) (Settlement Hearing) (attached to the Winchester Decl. as Exhibit 9) (noting award with an implied hourly rate of $762 was "not unusual or excessive," particularly in a contingent case); *Healthways* Settlement Hearing Tr. at 12:1-19, 42:3-4 (approving implied hourly rate of over $2,000 for near-identical relief to that obtained in the Settlement).

---

[11] In addition, Kessler Topaz's hourly rates have also been approved in matters before state and federal courts throughout the country. Winchester Decl., ¶ 55.

In summary, the hourly rates charged by Kessler Topaz and Friedman Oster are reasonable because they: (i) reflect each firm's respective standard hourly rates; (ii) are commensurate with those charged for similar services by lawyers of reasonably comparable skill, experience, and national reputation; and (iii) have been approved by this Court, and fall well within the range of those rates approved by the Delaware Court of Chancery. Accordingly, the hourly rates charged by Kessler Topaz and Friedman Oster should be approved by the Court.

### 3. The *Moulton* Factors Fully Support the Reasonableness of the Requested Attorneys' Fees and Expenses

As noted, "the Court may, 'within limits, adjust the 'lodestar' to reflect relevant considerations peculiar to the subject litigation.'" *Jeffries*, 2014 WL 7404000, at *16 (citing *Adcock–Ladd*, 227 F.3d at 349). Indeed, when assessing the reasonableness of a fee award, courts in the Sixth Circuit may consider:

> (1) the value of the benefit rendered to the plaintiff class; (2) the value of the services on an hourly basis; (3) whether the services were undertaken on a contingent fee basis; (4) society's stake in rewarding attorneys who produce such benefits in order to maintain an incentive to others; (5) the complexity of the litigation; and (6) the professional skill and standing of counsel involved on both sides.

*Moulton v. U.S. Steel Corp.*, 581 F.3d 344, 352 (6th Cir. 2009); *see also Ramey*, 508 F.2d at 1196. *See also Adcock-Ladd*, 227 F.3d at 349 (listing twelve factors a court may consider when deciding whether to enhance a requested lodestar multiplier").

"'There is no formula for weighing these factors. Rather, the Court should be mindful that each case presents a unique set of circumstances and arrives at a unique settlement, and thus different factors could predominate depending on the case."' *Ranney v. Am. Airlines*, No. 08-137, 2016 WL 471220, at *2 (S.D. Ohio Feb. 8, 2016) (quoting *In re Cardinal Health Inc. Sec. Litig.*, 528 F. Supp. 2d 752, 764 (S.D. Ohio 2007).

-27-

Plaintiff submits that the relevant *Moulton* factors further support of the fairness and reasonableness of the Attorneys' Fees and Expenses requested herein.

### a.    The Settlement Obtained Substantial Benefits for the Class

"Of these factors, the 'results obtained' is the most important factor in determining the reasonableness of a fee award." *Jeffries*, 2014 WL 7404000, at *17 (citing *Kentucky Rest. Concepts Inc. v. City of Louisville*, 117 F. App'x 415, 420 (6th Cir.2004)); *see also Adcock–Ladd*, 227 F.3d at 349 (for purposes of the *Adcock-Ladd* factors, "[a] highly important . . . factor is the result achieved.").  As discussed in Section III(B)(1), the Settlement provides significant benefits to the Class by: (i) procuring the Amendments, which eliminate the threats posed by the Dead Hand Proxy Puts at issue in the Action; and (ii) implementing the corporate governance reform designed to prevent the ANF Board from improperly agreeing to similar provisions in future agreements.  The substantial benefits conferred on the Class through the Settlement fully support the reasonableness of the Attorneys' Fees and Expenses sought by Plaintiff.

### b.    Class Plaintiff's Counsel Prosecuted This Action on a Wholly Contingent Basis

Class Plaintiff's Counsel undertook the prosecution of the Action on a wholly contingent basis.  Winchester Decl., ¶¶ 38-42, 61; *see In re Cardinal Health*, 528 F. Supp. 2d at 766 ("Several courts consider the risk of non-recovery the most important factor in the fee determination."); *see also In re Union Carbide Corp. Con. Prods. Bus. Sec. Litig.*, 724 F. Supp. 160, 164 (S.D.N.Y. 1989) ("[C]ontingent fee risk is the single most important factor in awarding a multiplier").  From the outset, Class Plaintiff's Counsel understood that they were embarking on a complex, and potentially expensive and lengthy litigation with no guarantee of ever being compensated for the investment of time and money the case would require. Winchester Decl., ¶¶ 38-42, 61.  Undaunted by these risks, Class Plaintiff's Counsel moved diligently to promptly and

effectively resolve this Action on very favorable terms to the Class and the ANF stockholder franchise.  *Id.*

> ### c.      Granting the Attorneys' Fees and Expenses Will Further Important Societal Interests

Rewarding attorneys who prosecute shareholder class action lawsuit "is important because . . . most individuals would lack the resource to litigate cases, and individual recoveries are often too small to justify the burden and expense of such litigation."  *In re Nationwide Fin. Servs. Litig.*, No. 08-00249, 2009 WL 8747486, at *14 (S.D. Ohio Aug. 19, 2009); *see also Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 548 (1949) (noting, in the related context of a shareholder derivative action, that "[t]his remedy [derivative actions], born of stockholder helplessness, was long the chief regulator of corporate management and has afforded no small incentive to avoid at least grosser forms of betrayal of stockholders' interests.  It is argued, and not without reason, that without it there would be little practical check on such abuses.").  If these important societal interests are to be carried out, courts need to award fees that will adequately compensate private plaintiffs' counsel, taking into account the enormous risks undertaken with a clear view of the economics of a stockholder derivative action.

> ### d.      The Attorneys' Fees and Expenses Are Fully Supported by Class Plaintiff's Counsel's Lodestar

Class Plaintiff's Counsel lodestar in this matter is $155,951.00, and, after subtracting the expenses incurred thus far, the requested Attorneys' Fees and Expenses represents a modest lodestar multiplier of 1.06.  Winchester Decl., ¶¶ 59-60.  This figure falls well within the range of those typically approved by this Court.  *Jeffries*, 2014 WL 7404000, at *19 (noting courts "typically" award attorneys' based on a lodestar multiplier between 1.25 and 5, and awarding a lodestar multiplier of 3 based on, *inter alia*, "skill of counsel, the risk undertaken by counsel, and counsel's ability to quickly resolve the dispute on favorable terms") (citing cases); *Cohn v.*

*Nelson*, 375 F. Supp. 2d 844, 862 (E.D. Mo. 2005) ("In shareholder litigation, courts typically apply a multiplier of 3 to 5 to compensate counsel for the risk of contingent representation.").

### e.  The Litigation Was Complex

As noted, "[m]ost class actions are inherently complex and settlement avoids the costs, delays, and multitude of other problems associated with them.'" *Gascho*, 2014 WL 1350509, at *18 (quoting *In re Telectronics*, 137 F. Supp. 2d at 1013) (internal quotation marks omitted). This Action, which alleged breach of fiduciary duties by the Individual Defendants and the aiding and abetting thereof by Wells Fargo, was no different. *See*, *e.g.*, *Nationwide*, 2009 WL 8747486, at *15 (noting breach of fiduciary duty claims against company's directors involved "complex questions of law and fact"); *Jeffries*, 2014 WL 7404000, at *8-9 (discussing difficulties of alleging and proving breach of fiduciary duty claims under Delaware law).

### f.  The Parties Are Represented by Experience, Highly-Qualified Counsel

As noted, the Parties are represented by highly qualified counsel with national reputations for their expertise in the areas of shareholder litigation.  In the face of this experienced, formidable, and well-financed opposition, Class Plaintiff's Counsel were nonetheless able to develop a case that was sufficiently strong enough to persuade Defendants to settle the Action on terms that are extremely favorable to the Class.  Winchester Decl., ¶ 7.  Class Plaintiff's Counsel have undoubtedly earned their Attorneys' Fees and Expenses. *See*, *e.g.*, *Nationwide*, 2009 WL 8747486, at *7, 15 (noting "highly experienced" plaintiff's counsel, coupled with a "formidable opposition [including] very skilled and experience counsel in securities and transactional litigation, who could draw upon the exceptional resources of their national recognized law firm[ ] . . . [are] factor[s] that may be considered when evaluating a fee request.").

## V.    <u>CONCLUSION</u>

The Settlement is fair, reasonable, and adequate, and should be approved by the Court. The Attorneys' Fees and Expenses are fair and reasonable, and should be approved by the Court as well.  Accordingly, Plaintiff respectfully requests the Court to grant the following, which are submitted herewith: (i) the Order and Final Judgment Approving Class Action Settlement; and (ii) the Fee Award Order.

Dated: June 7, 2016

Respectfully submitted,

/s/ Mark H. Troutma
**ISAAC WILES BURKHOLDER &
TEETOR, LLC**
Mark H. Troutman (0076390)
Two Miranova Place, Ste. 700
Columbus, Ohio 43215
Phone: (614) 221-2121
Facsimile: (614) 365-9516
mtroutman@isaacwiles.com

*Attorneys for Plaintiff Eric Gilbert*

Of Counsel:

**KESSLER TOPAZ
   MELTZER & CHECK, LLP**
Eric L. Zagar
Robin Winchester
280 King of Prussia Road
Radnor, PA 19087
Phone: (610) 667-7706
ezagar@ktmc.com
rwinchester@ktmc.com

**FRIEDMAN OSTER & TEJTEL PLLC**
Jeremy Friedman
Spencer Oster
David Tejtel
240 E. 79th Street, Suite A
New York, NY 10075
Phone:  (888) 529-1108
jfriedman@fotpllc.com
soster@fotpllc.com
dtejtel@fotpllc.com

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that the foregoing *Plaintiff's Motion for Final Approval of Class Action Settlement and an Award of Attorneys' Fees and Reimbursement of Expenses* was filed electronically through the Court's CM/ECF system on the 7th day of June, 2016. Notice of this filing will be sent to all parties by operation of the Court's system, and parties may access this filing through the Court's system.

/s/ Mark H. Troutman  
Mark H. Troutman (0076390)